IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division

No. 5:04-CV-291-BO(1)

| | |
|---|---|
| MICHELLE EVANS, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) **COMPLAINT**<br>) |
| HOUSING AUTHORITY OF THE<br>CITY OF RALEIGH, NC, | )<br>)<br>) |
| Defendant. | )<br>) |

FILED
5-4-04
CLERK
EDNC

Plaintiff, Michelle Evans, by and through her attorneys, files this Complaint against Defendants Housing Authority of the City of Raleigh, North Carolina and avers in support as follows:

1. Plaintiff, Michelle Evans, is a resident of Wake County, North Carolina who previously rented a house located at 1512 Rock Drive, Raleigh, NC. She is the single mother of three children: Shantel Campbell, age 10; and Ishiah and Ishmael Sutton, ages 4.

2. Defendant Housing Authority of the City of Raleigh, North Carolina (hereinafter "RHA") is a federally funded public housing authority organized and existing pursuant to N.C. Gen. Stat. ch. 157 for the purpose of providing decent, safe and sanitary low-cost housing to moderate and lower income families and individuals. Defendant is a corporation organized under North Carolina law and is subject, *inter alia*, to the provisions and requirements of federal law governing the Section 8 Housing Voucher Program set forth under Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437f, and the regulations promulgated thereunder.

3. Jurisdiction over Plaintiff's claims is conferred on this Court by 28 U.S.C. § 1331 in that this action arises under the Constitution and law of the United States and by 28 U.S.C. § 1343(a)(3) to redress the deprivations, under color of state law, of rights secured by the Fourteenth Amendment to the U.S. Constitution.

4. Supplemental jurisdiction over the state constitutional claims is conferred on this Court by 28 U.S.C. § 1367.

5. Plaintiff seeks declaratory relief against the Defendants and injunctive relief against Defendant RHA pursuant to 28 U.S.C. §§ 2201 & 2202 and 42 U.S.C. § 1983 which provide redress for the deprivation, under color of state law, of rights, privileges and immunities secured to all citizens and persons within the jurisdiction of the United States by the Constitution and law of the United States.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Plaintiff's claims arose in this District.

7. The Section 8 Tenant-Based Housing Choice Voucher Program is one of several rent subsidy programs aiding lower income families commonly known as "Section 8." Congress created the Section 8 Housing Voucher Program under the Housing and Community Development Act of 1974.

8. Pursuant to 42 U.S.C. § 1437f(a), the purpose of Section 8 programs, including the Housing Voucher Program, is to aid "lower income families in obtaining a decent place to live and of promoting economically mixed housing . . ." *Id.* The voucher program is designed to aid low-income families by providing rent subsidies to enable them to rent units in the existing private rental housing market.

9. The federal government, through the U.S. Department of Housing and Urban Development (HUD), allocates funds to local public housing agencies (PHAs) throughout the nation to administer the Section 8 Housing Voucher Program. Under the regulations, the local PHA enters into a Housing Assistance Payment contract with a property owner on behalf of an eligible family and agrees to subsidize the rental payment in an amount based on the family's income. The Housing Authority of the City of Raleigh, North Carolina is a PHA.

10. The PHA may deny or terminate assistance based only on the grounds set forth in 24 C.F.R. §§ 982.552(c)(1)(i)-(xi) & 982.551(b)-(m). When the PHA determines that it is going to terminate assistance for a participant family, the family is entitled to written notice and an informal hearing conducted by any person designated by the PHA other than the person who made or approved the decision or a subordinate of that person. 24 C.F.R. § 982.555.

11. The PHA hearing officer must issue a written decision, stating briefly the reasons for the decision. Factual determinations shall be based on a preponderance of the evidence presented at the hearing. 24 C.F.R. § 982.555(e)(6).

12. Plaintiff took occupancy of the dwelling located at 1512 Rock Drive, Raleigh, North Carolina owned by Ms. Daniel on or about August 21, 2002.

13. Ms. Daniel executed the required HAP contract governing Plaintiff's tenancy at the dwelling on October 17, 2002. (See attached Exhibit "A".) This contract provided that Ms. Daniel would receive rent in the amount of $1,175.00 monthly, to be paid by Plaintiff's Section 8 voucher and by Plaintiff's contribution. The term of Plaintiff's tenancy was from August 21, 2002 until August 31, 2003.

14. Plaintiff also executed a written lease with Ms. Daniel on or about August 1, 2002 for her rental of the dwelling. (See attached Exhibit "B".) This lease provided for rent at the

monthly rate of $1,175.00, and for a security deposit to be paid to Ms. Daniel of $1,175.00. According to the HAP contract, the parties' lease incorporated the HAP contract between Ms. Daniel and the RHA, and it took precedence over any contrary provisions contained in any separate lease executed by the landlord and tenant.

15. In order for rental property to qualify for use in the Section 8 program, it must meet federal Housing Quality Standards ("HQS") set forth in 24 C.F.R. § 982.401. Compliance with such standards is monitored by inspectors employed by the PHA administering the Section 8 assistance. The HAP contract signed by Ms. Daniel specifically permitted RHA to enforce compliance with the HQS's by suspending or abating assistance payments to Ms. Daniel. By executing the HAP contract, Ms. Daniel expressly agreed to maintain the premises in accordance with HQS.

16. Despite its initial approval for occupancy by an RHA inspector, the premises contained defects during the course of Plaintiff's occupancy. These defects included, but were not limited to, roach infestation in the refrigerator, cracked kitchen cabinet door, strong musty odor throughout the house, deteriorated floor underlayment, deteriorated window frame harboring insects, and nonfunctional clothes dryer outlet. Plaintiff's children contracted frequent ear and throat infections while living at the premises, which was possibly related to mold and/or mildew at the premises. Plaintiff complained to Ms. Daniel about all of these defects, but she did not repair them.

17. During the time that Plaintiff occupied the dwelling at 1512 Rock Drive, Ms. Daniel operated a beauty salon on the same premises. In addition, she displayed her real estate license at the same location.

18. In response to Ms. Daniel's refusal to address the defects in the dwelling, Ms. Evans filed a complaint with the Housing Authority of the City of Raleigh.

19. From April through July 2003, in four separate HQS inspections conducted by Inspectors with the RHA, the RHA found the dwelling to be in violation of the City of Raleigh minimum housing code in thirty-nine separate violations. (See attached Exhibit "C.)

20. Ms. Evans vacated the premises on or about July 11, 2003. On that day, Ms. Daniel conducted a walk-through and, in the presence of Wake County Sheriff's Deputies, told Ms. Evans that everything was "okay."

21. Ms. Evans thereafter discovered that Ms. Daniel claimed that Ms. Evans damaged the property when she received a letter from Ms. Daniel dated August 5, 2003. (See attached Exhibit "D".)

22. On or about September 25, 2003, the RHA mailed a letter to Michelle Evans terminating her from the Section 8 Voucher Program effective October 31, 2003, for damaging the unit previously rented from Ms. Daniel beyond normal wear and tear. (Attached as Exhibit "E".)

23. Ms. Evans timely requested an Informal Hearing and such hearing was scheduled for October 16, 2003.

24. Appearing at the Informal Hearing on October 16, 2003 were: Michelle Evans; her attorney, Roger Cook; Hearing Officer Kerry Davis; Evette Byrd, Director of Lease Housing; Mary Ella Hutchinson, Ms. Evans' current landlord and Real Estate Agent; and Paralegal Catherine Kelly. Glenda Daniel was not present at the hearing.

25. Ms. Evans requested that she be allowed to audiotape the Informal Hearing but that request was denied by RHA.

26. At the Informal Hearing, the RHA Hearing Officer, Kerry Davis, stated that the Section 8 Voucher termination procedure was based on the allegations of damages made by Ms. Daniel in her letter. No other evidence or explanation was presented by either the Hearing Officer or Evette Byrd.

27. On or about October 22, 2003, Hearing Officer Davis mailed a letter to Ms. Evans in which Hearing Officer Davis affirmed the decision to terminate Ms. Evans' Section 8 Voucher on the grounds that she damaged the premises beyond normal wear and tear. (Attached as Exhibit "F".) The Hearing Officer's one-sentence conclusory statement did not provide either findings of fact or any other support for her decision.

28. Ms. Evans is not able to pay the fair market rent on another dwelling. She and her children will likely become homeless if this Court does not grant injunctive and declaratory relief.

29. If Ms. Evans becomes homeless, it is likely that the N.C. Department of Health and Human Services will remove her children from her care and place them in foster care.

30. The termination of her Section 8 assistance has caused Ms. Evans to suffer emotional distress, increased anxiety, pain and suffering.

### FIRST CLAIM FOR RELIEF
**Violation of the Right to Due Process of Law under the Fourteenth Amendment to the U.S. Constitution**

31. Paragraphs 1-30 of this Complaint are incorporated herein by reference.

32. Participation in the Section 8 Tenant-Based Housing Choice Voucher Program is a protected property interest that cannot be terminated without due process of law. *Goldberg v. Kelly*, 397 U.S. 254 (1970).

33. Defendant RHA's termination of Ms. Evans' Section 8 Voucher without affording her an opportunity to confront the person who made the allegations upon which the termination decision was wholly based, failing to provide specific findings of fact, and allowing the hearing decision to be made by the subordinate of Yvette Byrd who represented the RHA at the hearing violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

34. As a direct and proximate result of Defendant's actions, Plaintiff and her family suffered and continue to suffer injury, including but not limited to the inability to receive the Section 8 assistance to which she is entitled.

## SECOND CLAIM FOR RELIEF
### Violation of U.S. Housing Act, 42 U.S.C. § 1437 *et seq.*

35. Paragraphs 1-34 of this Complaint are incorporated herein by reference.

36. Defendants' termination of Ms. Evans' Section 8 assistance without affording her an opportunity to confront the evidence held against her, failing to provide specific findings of fact, and allowing the hearing decision to be made by the subordinate of Yvette Byrd who represented the RHA at the hearing violates the U.S. Housing Act and HUD regulations at 24 C.F.R. Part 982.

37. Defendant violated the U.S. Housing Act by terminating Ms. Evans' assistance based on unsubstantiated allegations by a former landlord who was not present at the termination hearing.

38. As a direct and proximate result of Defendant RHA's actions, Plaintiff and her family suffered and continue to suffer injuries.

## THIRD CLAIM FOR RELIEF
### Violation of the Right to Due Process of Law as Guaranteed by the N.C. Constitution, Art. I, ¶ 19

39. Paragraphs 1-38 of this Complaint are incorporated herein by reference.

40. Defendant RHA's actions deprived Ms. Evans of life, liberty and property without due process of law in violation of N.C. Constitution, Art. I, ¶ 19.

41. As a direct and proximate result of Defendant's actions, Plaintiff and her family suffered and continue to suffer injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michelle Evans respectfully requests that this Court:

A. Assume jurisdiction over this action.

B. Find and declare that the termination of Ms. Evans' participation in the Section 8 Tenant-Based Housing Choice Voucher Program violated her rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; N.C. Constitution, Art. I, ¶ 19; and the U.S. Housing Act and the regulations promulgated thereunder.

C. Issue a preliminary injunction and permanent injunction enjoining Defendant RHA, its agents, successors and employees from terminating Ms. Evans Section 8 Voucher and requiring Defendant RHA to resume rent subsidy payments.

D. Order payment of assistance on Ms. Evans' behalf as long as she is otherwise eligible for such assistance.

E. Award damages to Plaintiff.

F. Award reasonable costs and disbursements to Plaintiff.

G. Grant the Plaintiff such other and further relief as the Court so determines.

Respectfully submitted on this 30th day of April, 2004.

                          LEGAL AID OF NORTH CAROLINA, INC.

                          *Roger M. Cook*

                          Roger M. Cook, N.C. State Bar # 13216
                          224 South Dawson Street
                          P. O. Drawer 1731
                          Raleigh, NC 27602-1731
                          Phone: 919-828-4647
                          Fax: 919-839-8370


                          WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

                          *Elaine M. Whitford*

                          Elaine M. Whitford, N.C. State Bar # 21802
                          150 Fayetteville Street Mall, Suite 2100
                          P. O. Box 831
                          Raleigh, NC 27602-0831
                          Phone: 919-755-8175
                          Fax: 919-755-6163


JURY TRIAL DEMANDED.

## **PARTIALLY SCANNED DOCUMENT**

THIS IS A PARTIALLY SCANNED DOCUMENT. PLEASE SEE THE CASE FILE FOR ANY ATTACHMENTS OR OTHER MATERIALS WHICH HAVE NOT BEEN SCANNED.

## **PARTIALLY SCANNED DOCUMENT**